**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **PEIDE YAN,** | * |
| Appellant/Cross-Appellee, | * |
| v. | *     Case Nos.: PWG-17-742 |
|  |                               PWG-17-870 |
| **ZHENGANG ZHANG,** *et al.*, | * |
| Appellees/Cross-Appellants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Songsheng Chen, Chaohong Shi, Li Che, Zhengang Zhang, KZDJ, Inc. ("KZDJ"), and Paxi, LLC ("Paxi")[1] filed an involuntary bankruptcy proceeding against Peide Yan in the United States Bankruptcy Court for the District of Maryland on July 15, 2016. Invol. Pet., ECF No. 2-1; Order Entering Relief Under Chapter 7 on Invol. Pet. ("Order Entering Relief"), ECF No. 1-1. Because they filed their petition pursuant to 11 U.S.C. § 303[2] and there were fewer than twelve

---

[1] I will refer to Chen, Shi, KZDJ, Che and Zhang as "Appellees" and I will refer to Appellees and Paxi together as "Petitioning Creditors."

[2] Section 303(b) provides:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title--
>
> **(1)** by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, . . . if such noncontingent, undisputed claims aggregate at least $15,775[1] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> **(2)** if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $15,775 of such claims;

creditors, one or more of the six Petitioning Creditors had to hold non-contingent, undisputed, unsecured/undersecured claims that totaled at least $15,775.[3] *See* 11 U.S.C. § 303(b)(2).

Appellees concede that "Zhang, Che, and KZDJ did not hold eligible claims against Yan because each was an insider of Yan and their claims were still the subject of a litigation pending in the Circuit Court for Montgomery County, Maryland in *Zhengang Zhang, et al. v. Peide Yan, et al*, Case No. 405780." Appellees' Opp'n & Br. 2, ECF No. 13. And, the Bankruptcy Court entered an Order Determining that Paxi, LLC Does Not Qualify as a Petitioning Creditor ("Order Disqualifying Paxi"), ECF No. 13-10. The remaining creditors, Chen and Shi, jointly held a single claim against Yan (Hr'g Tr. 116:19–21 ("Chen and Shi, accounted to one, because their judgment was one judgment, not two creditors, but one."); Chen & Shi Jmt., ECF No. 13-4), which they alleged was for $339,208.77, *see* Invol. Pet. Yan acknowledged that Chen and Shi jointly held a judgment against him, but disputed the claimed amount, insisting that it was in the amount of $216,000. The Bankruptcy Court concluded that, because Yan did not dispute that he

---

11 U.S.C. § 303(b).

[3] Judge Mannes of the United States Bankruptcy Court for the District of Maryland has explained:

> [T]he calculation made pursuant to § 303(b)(2) . . . . is intended to ensure that qualified petitioning creditors hold unsecured—or undersecured—claims aggregating at least $[15,775]. As described in 2 *Collier on Bankruptcy* ¶ 303.15 (Alan N. Resnick and Henry J. Sommer, eds., 16th ed.):
>
>> Another aspect of the dollar requirement is that the dollar amount must be calculated based on unsecured, as distinguished from secured, debt. This is supported by the language "more than the value of any lien on property ... securing such claims." In other words, the dollar requirement can only be composed of either the undersecured portion of the debt owed a petitioning secured creditor or a totally unsecured claim of a petitioning unsecured creditor. This means that a secured claim cannot count toward the dollar requirement.

*In re Ali*, No. 12-13251-PM, 2012 WL 5949571, at *2 (Bankr. D. Md. Nov. 28, 2012).

owed the amount of the judgment, Chen and Shi held a non-contingent, undisputed claim for purposes of 11 U.S.C. § 303(b). It granted the relief that the Petitioning Creditors requested in the involuntary petition under Chapter 7 of the Bankruptcy Code. Order Entering Relief.

Both sides filed notices of appeal. ECF No. 1 in PWG-17-742; ECF No. 1 in PWG-17-870. I consolidated the appeals and directed the parties to brief their appeals as cross-appeals, ECF No. 5, which they have done, ECF Nos. 13, 14, 15, 16. Appellant Yan contends that the Bankruptcy Court erred in issuing the Order Entering Relief Under Chapter 7 on Involuntary Petition, ECF No. 1-1, because, in his view, Appellees "failed to meet their *prima facie* burden of establishing that any of the[m] . . . was the holder of a claim against Yan that was not contingent as to liability or the subject of a bona fide dispute as to liability or amount." Yan Br. 4–5. Appellees challenge the Bankruptcy Court's Order Disqualifying Paxi, ECF No. 13-10, and Order Denying Motions for Reconsideration (of the Order Disqualifying Paxi) ("Order Denying Recons."), ECF No. 13-13. Appellees' Opp'n & Br. 22. They raise the following issues:

> 1. Did the bankruptcy court err in determining that Paxi, LLC ("**Paxi**") was not a qualified petitioning creditor?
>
> 2. Did the alleged debtor, Peide Yan ("**Yan**"), waive the defense of Paxi's lack of standing by failing to assert Paxi's lack of capacity within 21 days of service of the Involuntary Summons in either Yan's Answer, Supplemental Answer, or a motion to dismiss the involuntary petition?
>
> 3. Was Yan estopped from contesting Paxi's eligibility as a petitioning creditor by virtue of having admitted in his list of creditors and amended list of creditors that Paxi held a valid claim against Yan?
>
> 4. Did Paxi have standing to be a petitioning creditor under applicable federal law even if Paxi lacked such standing under state law?
>
> 5. Even if Paxi lacked standing to be a petitioning creditor as of the petition date, did the subsequent reinstatement of Paxi's charter also reinstate Paxi's eligibility as a petitioning creditor?

*Id*. at 24–25.

Having reviewed the parties' briefs and the record, I find oral argument unnecessary. *See* Fed. R. Bankr. P. 8012; Loc. R. 105.6. There is a single issue, the answer to which makes all other issues that the parties raise moot: Whether Paxi had authority, despite the forfeiture of its rights to do business in Maryland and use its name, to take action to place Yan into involuntary bankruptcy in order to protect the undisputed obligation owed to it. Because it did have this authority, such that it was a qualified petitioning creditor, the Petitioning Creditors met the statutory requirements of § 303(b)(2) based on Paxi's claim, regardless of whether Chen and Shi's claim was disputed. Yan's challenge to the Order Entering Relief, based on his belief that Chen and Shi's claim did not qualify, consequently becomes moot. Also moot are the issues Appellees raised regarding waiver and estoppel, because Yan could not have succeeded on a challenge to Paxi's ability to bring the petition. The question of the effects of Paxi's later reinstatement on its previous eligibility also becomes moot, as Paxi was eligible in the first place. Accordingly, the Bankruptcy Court's Order Disqualifying Paxi is reversed, which renders its Order Denying Motions for Reconsideration moot, and the Bankruptcy Court's Order Entering Relief Under Chapter 7 on Involuntary Petition is affirmed.

**Standard of Review**

This Court has jurisdiction over appeals from the bankruptcy court. 28 U.S.C. § 158. It is well established that this Court "reviews a bankruptcy court's findings of fact for clear error and conclusions of law de novo." *Rosen v. Kore Holdings, Inc. (In re Rood)*, 448 B.R. 149, 157 (D. Md. 2011); *see In re Official Comm. of Unsecured for Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 231 (4th Cir. 2006). Also, this Court reviews the bankruptcy court's application of law to fact for abuse of discretion. *Coggins & Harman, P.A. v. Rosen (In re Rood)*, No. DKC-12-1623, 2013 WL 55650, at *2 (D. Md. Jan. 2, 2013).

**Discussion**

The crux of this case is the Bankruptcy Court's Order Disqualifying Paxi as a petitioning creditor, in which it reasoned that "the forfeiture of Paxi, LLC's right to do business and the right to the use of its name rendered it ineligible to be a petitioning creditor with respect to the Involuntary Petition filed on July 15, 2016, against Peide Yan." Order Disqualifying Paxi 1.

*Applicability of Federal Law*

Appellees and Paxi, in separate motions, sought reconsideration of the Order Disqualifying Paxi, arguing as they do here that, pursuant to Bankruptcy Rule 7017, federal law—not state statute or case law—governs capacity to sue in federal court generally and federal bankruptcy court in particular. Appellees' Opp'n & Br. 35; *see* Order Denying Recons. 11–12. It is true that, for adversary proceedings, Bankruptcy Rule 7017 incorporates Federal Rule 17, which in turn provides that an LLC that lacks the capacity to sue under "the law of the state where the court is located" nonetheless "may sue . . . in its common name to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A); *see* Fed. R. Bankr. P. 7017. But, as the Bankruptcy Court said, and as Yan correctly asserts, Federal Rule 17 does not apply to involuntary cases, because Bankruptcy Rule 1018 does not incorporate Rule 7017. *See* Fed. R. Bankr. P. 1018 (identifying specific bankruptcy rules that apply to involuntary cases, which, notably, do not include Rule 7017); Fed. R. Civ. P. 81(a)(1) ("[The Federal Rules] apply to bankruptcy proceedings to the extent provided by the Federal Rules of Bankruptcy Procedure."); Order Denying Recons. 6, 11–12; Yan Reply & Opp'n 25.

Certainly, "[i]f directed by the bankruptcy court, Rule 17 of the Federal Rules of Civil Procedure can be applied to contested matters [including] proceedings related to contested

involuntary petitions . . . ." *In re Murray*, 199 B.R. 165, 171 (Bankr. M.D. Tenn. 1996) (citing Fed. R. Bankr. P. 1018 and 9014)); *see* Fed. R. Bankr. P. 1018 ("The court may direct that other rules [governing adversary proceedings, such as Rule 7017] shall also apply."); Fed. R. Bankr. P. 9014 (stating that Bankruptcy Rule 7017 applies to "contested matter[s] not otherwise governed by the[] [Bankruptcy Rules]"). And, by operation of Bankruptcy Rule 9029(b), some courts have applied Federal Rule 17 "to determine capacity to file a bankruptcy petition." *In re Murray*, 199 B.R. at 171–72; *see* Fed. R. Bankr. P. 9029(b) ("Procedure When There is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, these rules, Official Forms, and local rules of the district."). Yet, in this case, the Bankruptcy Court expressly declined to apply Bankruptcy Rule 7017 or Federal Rule 17. Order Denying Recons. 11–12.

*State Law*

The Bankruptcy Court relied on Sections 4A-911 and 4A-920 of the Corporations and Associations Article of the Maryland Code to disqualify Paxi. Section 4A-911 provides that, when a Maryland limited liability company ("LLC"), such as Paxi, "has not paid a tax due before October 1 of the year after the tax became due," as Paxi failed to do, "its right to do business in Maryland and the right to the use of its name will be forfeited unless all taxes, interest, and penalties due by it are paid." Md. Code Ann., Corps. & Ass'ns § 4A-911(a)(1)–(2). The forfeiture is subject to § 4A-920, which provides:

> The forfeiture of the right to do business in Maryland and the right to the use of the name of the limited liability company under this title does not impair the validity of a contract or act of the limited liability company entered into or done either before or after the forfeiture, or prevent the limited liability company from defending any action, suit, or proceeding in a court of this State.

Corps. & Ass'ns § 4A-920.

6

Construing this language, the Court of Special Appeals of Maryland held that a forfeited LLC cannot file a lawsuit in a Maryland court. *See Price v. Upper Chesapeake Health Ventures, Inc.*, 995 A.2d 1054, 1061–62 (Md. Ct. Spec. App. 2010). In *Price*, two members of a Maryland LLC filed a derivative action on behalf of the LLC, alleging various tort claims, even though the LLC's "rights to do business in Maryland and to use its name [had been] forfeited" for failure to file a tax report. *Id.* at 1055–56. The trial court granted the defendants' motions to dismiss, "holding that the[] [members] could not sue on behalf of the company because it was a legal non-entity and lacked the power to sue, and because [the plaintiffs] were no longer members of the defunct company." *Id.* at 1062. On appeal, the Court of Special Appeals "disagree[d] with the circuit court's conclusion that the company ceased to exist after the forfeiture," as well as it conclusion that the plaintiffs were no longer members. *Id.* at 1062–63.

Yet, the appellate court affirmed the dismissal on the basis that neither the LLC, nor the members on its behalf, could file suit, despite the continued existence of the LLC. *Id.* at 1063. In its analysis, the Court of Special Appeals noted that Corporations and Associations § 4A-920 "is a non-impairment provision or 'savings clause' preserving contract validity and litigative defense rights," and that "with respect to court proceedings, the statute expressly provides that a forfeited LLC may only defend an action in court." *Id.* at 1061. It concluded that "[t]he negative implication of such language, and the sweep of the 'doing business' and name 'using' prohibition is that the company may not *file or maintain* a lawsuit after its rights have been forfeited," holding that "an LLC whose rights have been forfeited for tax failures still exists as an entity, but may only defend an action in court, not prosecute one." *Id.* at 1061–62. Given this precedent, insofar as Yan asserts that "Paxi was not permitted to use its name or to initiate *a civil action in the courts of the State of Maryland*," Yan Reply & Opp'n 17 (emphasis added), I agree.

7

But, unlike the LLC members in *Price*, Paxi did not bring state law tort claims in state court; Paxi initiated an involuntary bankruptcy proceeding in federal bankruptcy court. Significantly, the Court of Special Appeals held more recently—after the Bankruptcy Court issued its Order Denying Reconsideration—in *Willow Grove Citizens Association v. County Council of Prince George's County* that the forfeiture of an LLC does "not impair the validity" of an application filed with a county agency, because an application is not a lawsuit, and an agency is not a Maryland court. 175 A.3d 852, 855, 857 (Md. Ct. Spec. App. 2017). In *Willow Grove*, a forfeited LLC "applied for a special exception with the Prince George's County Office of Zoning," seeking to "operate a 15–person adult day care facility and a 63–unit assisted living facility" on property zoned Rural Residential. *Id.* at 854–55. The Maryland National Capital Park and Planning Commission accepted the application; the zoning hearing examiner recommended approval; the Prince George's County Council approved the special exception, reasoning that the forfeited LLC still was "legally authorized to engage in the *activity* of filing an application for a special exception concerning real or personal property to the Maryland National Capital Park and Planning Commission"; and the Circuit Court for Prince George's County affirmed. *Id*.

On appeal, the Court of Special Appeals, citing *Price*, noted that, "[u]nlike a corporation, an LLC does not become a non-entity after forfeiture," and, "[c]ritically, forfeiture has no effect on the validity of an LLC's contracts or other acts." *Id.* at 856; *see also Price*, 995 A.2d at 1059 ("[T]ax-failure forfeiture by an LLC, while resulting in the loss of important rights, does not make the LLC a legal non-entity."). *Cf.* Corps. & Ass'ns § 3-503(d) ("[T]he charters of the *corporations* [that fail to pay taxes] are repealed, annulled, and forfeited, and the powers conferred by law on the corporations are *inoperative, null, and void* . . . ." (emphasis added)). It

rejected the argument that the forfeited LLC's "actions were a nullity," reasoning that, because the company "was an LLC when it applied for a special exception," it "was a legal entity with the power to enter into binding contracts, and its acts were at all times legally valid." *Willow Grove*, 175 A.3d at 857.

Then, noting "the 'negative implication' of the final phrase of § 4A–920, which provides that an LLC may *defend* any lawsuit after forfeiture," the Court of Special Appeals observed that "[t]here is no such implication in the first part of § 4A–920, which broadly affirms the validity of 'a contract or act of the limited liability company entered into or done either before or after the forfeiture.'" *Id.* Significantly, it stated that "the language in § 4A–920 concerning lawsuits applies to actions '*in a court of this State*.'" *Id.* (quoting Corps. & Ass'ns § 4A-920 (emphasis added in *Willow Grove*)). The Court of Special Appeals concluded that, because the forfeited LLC "did not file its application *in a Maryland court*, the implicit prohibition against bringing lawsuits in § 4A–920 is irrelevant." *Id.* (emphasis added).

There can be no room for doubt that a federal bankruptcy court is not a court of the state of Maryland, even if it is located in Maryland. *See Proctor v. Wash. Metro. Area Transit Auth.*, 990 A.2d 1048, 1067 (Md. 2010) ("The plain language of the § 12–104(a) of the State Government Article states that claims under the MTCA may only be made 'in a court of the State.' . . . [T]he phrase 'in the court of the State,' . . . mean[s] 'a court that is part of the Maryland judiciary,' meaning that § 12–104(a) does not permit a claimant to file a claim pursuant to the MTCA in federal court.") (citing *State v. Sharafeldin*, 854 A.2d 1208, 1219 (Md. 2004), which defined "in a court of the State" as "a court that is part of the Maryland judiciary"). Additionally, an involuntary petition in bankruptcy court is "not in any sense the commencement of a civil action in a United States District Court sitting either at law or in equity . . . ."

*Associated Elec. Supply Co. of Omaha v. C. B. S. Elec. Sales Corp.*, 288 F.2d 683, 684 (8th Cir. 1961); *see also Georgia Jewelers, Inc. v. Bulova Watch Co.*, 302 F.2d 362, 369 (5th Cir. 1962) (stating that an involuntary petition of bankruptcy "is so obviously a 'proceeding in bankruptcy'" and not "an ordinary Civil Action of law or equity"); *In re Love B. Woods & Co.*, 222 F. Supp. 161, 163 (S.D.N.Y. 1963) ("[T]he filing of this involuntary petition was not the commencement of a civil action in a United States District Court . . . .").

*Analysis*

Maryland state law does not render Paxi ineligible to file an involuntary bankruptcy petition under the circumstances before me. To begin with, the undisputed judgment that Paxi holds is a confessed judgment. *See* Paxi Jmt., ECF No. 13-25. A confession of judgment is "[a] person's agreeing to the entry of judgment upon the occurrence or nonoccurrence of an event, such as making a payment," or "[a] judgment taken against a debtor by the creditor, based on the debtor's written consent." Confession of Judgment, Black's Law Dictionary (Garner ed., abridged 7th ed. 2000). In other words, a confessed judgment is a contract. *See Walker v. Powers*, 104 U.S. 245, 248–49 (1881) ("If rendered on a contract, the judgment is a contract, the nature and extent of the liability having been thereby judicially ascertained."). Therefore, the validity of the judgment was not impaired by Paxi's forfeiture. *See* Corps. & Ass'ns § 4A-920.

Additionally, Paxi's act of filing the involuntary petition was not the initiation of a lawsuit. *See Associated Elec. Supply Co.*, 288 F.2d at 684; *Georgia Jewelers*, 302 F.2d at 369; *In re Love B. Woods & Co.*, 222 F. Supp. at 163. Nor was it a filing in a Maryland state court. *See Proctor*, 990 A.2d at 1067; *Sharafeldin*, 854 A.2d at 1219. Therefore, the *Price* holding did not bar the proceeding. *See Willow Grove*, 175 A.3d at 857; *see also Price*, 995 A.2d at 1061–

10

62. Thus, the filing was an "act of the limited liability company . . . done . . . after the forfeiture" that was not impaired by the forfeiture. *See* Corps. & Ass'ns § 4A-920.

Further, although the Bankruptcy Court has the discretion to decide whether to apply Federal Rule 17, *see* Fed. R. Civ. P. 1018, it nevertheless "must administer and enforce the Bankruptcy Act as interpreted by th[e] [Supreme] Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles." *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 162–63 (1946). In this regard, it is noteworthy that Paxi attributes its inability to pay its taxes to Yan and offers an affidavit in support. Su[4] Aff. ¶ 9, ECF No. 2-51 ("Paxi, LLC has not been doing business in the state of Maryland since on or about June 2009 when it was forced to close its doors as a result of the actions of Xiaolan Zhang [Yan's wife] and Peide Yan, who executed a Lease Assignment and Modification Agreement . . . for a commercial business. Zhang and Yan ultimately defaulted on the terms of the parties' agreement in failing to pay the rent owed to the landlord and to a contractor. As a result, Paxi, LLC ceased its business operations."). And, "[s]ince the forfeiture of its charter, Paxi, LLC has limited its activities to winding up its business affairs by collecting the Judgment [it obtained against Yan and Zhang], Paxi, LLC's last remaining asset." *Id*. ¶ 8. Additionally, Paxi filed its Articles or Certificate of Reinstatement on November 15, 2016, and "[o]n November 17, 2016, SDAT [State Department of Assessments & Taxation] revived Paxi's Maryland charter, meaning that Paxi 'took the legal steps necessary to reinstate its existence' and 'is currently back to active status having been forfeited in the past.'" Appellees' Opp'n & Br. 28.[5] Thus, the forfeiture ended during the pendency of the involuntary petition and before the

---

[4] Xiangnan Su is one of Paxi's two members. Su Aff. ¶ 4.

[5] Although Appellees only cite to Paxi's November 15, 2016 filing and not the source of the language they quote, Yan "is satisfied that the facts regarding Paxi's forfeiture, the timing of the

Bankruptcy Court issued its Order Disqualifying Paxi on November 22, 2016. Even if Paxi's late payment does not mean that it could have joined the petition at that late juncture, *see* 11 U.S.C. § 303(c) ("After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, *other than a creditor filing under subsection (b) of this section*, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section." (emphasis added)), it weighs in favor of recognizing Paxi as a petitioning creditor on equitable principles, insofar as the law does not hold otherwise. *See generally Vanston*, 329 U.S. at 162–63; Fed. R. Bankr. P. 9029(b).

I am also cognizant that "bankruptcy, an equitable proceeding, is more liberal than garden variety lawsuits with respect to parties" in determining "capacity to sue" and "capacity to petition as a creditor." *In re Vento Dev. Corp.*, 560 F.2d 2, 4 (1st Cir. 1977). In the case before me, the petitioning creditor was trying to collect on a judgment from a debtor whose failure to pay, based on the evidence offered by Appellees and unrefuted by Yan, caused the creditor not to pay its taxes and forfeit its rights under Corps. & Ass'ns § 4-911(a), yet the creditor acted to undo the forfeiture while the bankruptcy proceeding was pending and while it still was a party to the proceeding. If applied, Federal Rule 17 would permit the creditor to file suit in federal court, despite its lack of capacity to sue in state court. *See* Fed. R. Civ. P. 17(c)(3). The rules in bankruptcy court should not be stricter. *See In re Vento Dev. Corp.*, 560 F.2d at 4. Under these circumstances, equitable principles counsel in favor of allowing Paxi's claim. *See Vanston*, 329

---

filing of the Petition and other filings in Yan's bankruptcy case, and the timing of Paxi's reinstatement are sufficiently covered in [Appellees'] Brief," Yan Reply & Opp'n 11. Accordingly, I accept that Paxi was no longer forfeited as of November 17, 2016.

U.S. at 162–63.  Accordingly, neither equitable principles nor state law dictate the result that the Bankruptcy Court reached.

## Conclusion

In sum, the Bankruptcy Court erred in disqualifying Paxi as ineligible under applicable law.  The Bankruptcy Court's Order Disqualifying Paxi as a Petitioning Creditor IS REVERSED; its Order Denying Reconsideration IS MOOT; and its Order Entering Relief, which now pertains to Paxi as a petitioning creditor as well, IS AFFIRMED.

Having entered this Memorandum Opinion and the accompanying Order, the Clerk shall CLOSE this case.[6]

A separate Order follows.


Dated:  March 14, 2018                                        /S/
                                                                                  Paul W. Grimm
                                                                                  United States District Judge
lyb

---

[6] As noted, the resolution of these cross-appeals closes this case in this Court.  However, should either party intend to file any further motions in this Court, the pre-motion conference requirements described in the Letter Order Regarding the Filing of Motions, ECF No. 2 in PWG-17-870, shall apply.